## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID A. PEREZ, Sr., TONY B. VIGIL,
HAROLD PORTER and JAMES D. PORTER,

        Plaintiffs,

v.                                    No. CIV 03-361 JP/LFG

T. GLENN ELLINGTON, in his individual capacity,
and JAMES BURLESON, in his individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Tom Talache's ("Talache") Motion for Protective Order, filed November 6, 2003 [Doc. No. 40] and  Herbert Yates' ("Yates") similar Motion for Protective Order, filed November 6, 2003 [Doc. No. 41].  Talache and Yates are both tribal officials of the Pueblo of Nambé ("Nambé" or "Nambé Pueblo") and non-parties to this lawsuit.  Talache is the current Governor of Nambé, and Yates is a Tribal Councilman of Nambé.  Nambé (also a non-party) requests, on behalf of Talache and Yates, that the Court enter protective orders prohibiting Plaintiffs' issuance of subpoenas related to the depositions of both Talache and Yates.  The Motions for Protective Order are fully briefed,[1] and no oral argument is necessary.  After careful consideration

---

[1]The Individual Defendants did not submit any brief or position as to the requested depositions.

of the pleadings, attachments, argument of counsel and the pertinent law, the Court concludes that the Motions for Protective Order should be granted.  The Court's reasoning is set out below.[2]

### Background

This case involves claims by four members of the Nambé Pueblo – a former Governor of Nambé and three Tribal Councilors – against employees of the New Mexico Taxation and Revenue Department, as named in their individual capacities.  [Doc. No. 3, First Amended Complaint.] Plaintiffs complain that Defendants' issuance of a $4.7 million Jeopardy Assessment against each of them in February 2002 was a gross, unwarranted, punitive, and illegal abuse of power that violated Plaintiffs' rights under various federal civil rights statutes and the United States Constitution.  [Doc. No. 3.]

There has been testimony in this case by Defendant James Burleson, former Deputy Secretary of the New Mexico Taxation and Revenue Department, Defendant T. Glenn Ellington, former Secretary of the Department, and Javier Lopez, a Department attorney, that Defendants issued the assessments against Plaintiffs based in significant part on statements made by Talache and/or Yates. [Doc. No. 47, Ex. 2, Nov. 10, 2003 Depo. of Burleson, Aff. of Ellington, and Oct. 15, 2003 Depo. of Lopez.]  As a result of this testimony, Plaintiffs served subpoenas and notices of deposition on Talache and Yates at their place of business at the Governor's Office at Nambé.  [Doc. No. 47, Ex.

---

[2]The Court observes that on January 20, 2004, Plaintiffs filed an unopposed motion to modify scheduling deadlines (including discovery) and the trial date.  Discovery was scheduled to close on January 16, 2004, and Plaintiffs requested additional time for discovery in the event that the Court's rulings on the motions for protective order  permitted the requested depositions to proceed.  On January 29, 2004, Senior Judge Parker granted Plaintiffs' unopposed motion to modify deadlines and the trial date and advised the parties to notify the Court if discovery was extended beyond June 25, 2004.  Based on the undersigned judge's rulings, discovery in this case will now close thirty days after entry of this Order, or by no later than March 2, 2004. No other pretrial deadlines are affected.  A separate scheduling order will be entered.

1.]  Plaintiffs seek to depose Talache and Yates regarding statements they made either to or in the presence of the individual Defendants and to explore the reasons for those statements.

In support of the depositions, Plaintiffs assert that the testimony of Talache and Yates is very relevant and significant to the development of proof in this case.  Nambé Pueblo, on behalf of Talache and Yates, argue that they are not required to appear for depositions in this matter because they are immune from federal process under the doctrine of sovereign immunity.  Plaintiffs assert that individuals and tribal officers are not immune from having to appear at depositions in a federal lawsuit, especially here where the Tribe is not a party to the lawsuit and Plaintiffs have not made any claims against Nambé.

The first problem with Plaintiffs' issuance of the Notices and Subpoenas for Deposition to Talache and Yates is procedural.  Plaintiffs mailed the Notices on October 28, 2003, less than 14 calendar days before the depositions were scheduled on November 10, 2003.  Under this District's Local Civil Rules, service of a notice of deposition must be made at least 14 calendar days before the scheduled deposition.  D.N.M. LR-Civ 30.1.  In addition, according to Talache and Yates, Plaintiffs did not confer in good faith regarding the scheduled depositions before serving the notices.  The local rules require counsel to confer in good faith with each other before scheduling and noticing a deposition.  D.N.M. LR-Civ 30.1.  The Motions for Protective Order could be granted on those grounds alone, i.e., for violations of the Local Civil Rules of the District of New Mexico.[3]  However, Plaintiffs most likely could correct these procedural deficiencies, thereby requiring the Court to reach

---

[3]Both Talache and Yates, through counsel for Nambé, properly filed notices of non-appearance and motions for protective order.  Plaintiffs do not argue that the notices of deposition were mailed in compliance with the local rules or that they conferred in good faith before mailing the notices.

the substantive issue of whether tribal sovereign immunity protects Talache and Yates from having to appear at depositions in this matter.  Thus, the Court proceeds to the substantive issue.

## Analysis

## I.   TRIBAL SOVEREIGN IMMUNITY

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) (internal citation omitted).  The United States Supreme Court originally enunciated the doctrine of Indian tribal sovereignty and has reaffirmed the doctrine in a number of cases.  Id. at 510.  Congress has had the opportunity to dispense with or limit the doctrine but instead, "has consistently reiterated its approval of the immunity doctrine."  Id.

Notwithstanding a tribe's sovereign status, a tribe does not have the full power of a sovereign nation.  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55 (1978); Seneca-Cayuga Tribe of Okla. v. State of Okla., et al., 874 F.2d 709, 714-15 (10th Cir. 1989).  In other words, a tribe's immunity is not absolute.  To the extent that there might be a waiver of tribal sovereign immunity, any such waiver must be strictly construed.  Seneca-Cayuga Tribe, 874 F.2d at 715.  Indeed, a waiver of tribal sovereign immunity must be unequivocal and/or express, either by the Tribe or by abrogation by Congress.  Fletcher v. United States, 116 F.3d 1315, 1324, 1325 (10th Cir. 1997).  Such waiver cannot be implied.  United States v. Testan, 424 U.S. 392, 399 (1976), *criticized on other grounds*, 463 U.S. 957 (1976).

## II.   APPLICATION OF DOCTRINE OF TRIBAL SOVEREIGN IMMUNITY

Plaintiffs argue that these two non-party fact witnesses are not protected by sovereign immunity in a case such as this where the tribe is not being sued, where the tribal officials were acting

in their individual capacities, and/or where Nambé, Talache and Yates waived any claim to sovereign immunity they had by inviting the State taxation department into the Pueblo and approving a Memorandum of Agreement and Information Sharing Agreement that gave the State taxation department powers over Pueblo members' records.

### A.     Non-Party Subpoenas in Civil Litigation

Plaintiffs' general argument is that the Pueblo or Talache and Yates are not entitled to immunity because this lawsuit does not actually name Nambé as a party.  In other words, non-party fact witnesses such as Talache and Yates should not be protected by immunity from federal court process in a case such as this.

In Catskill Development, L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 86 (S.D.N.Y.),[4] reconsideration denied, 204 F. Supp. 2d 647 (S.D.N.Y. 2002), the federal district court summarized the state of the law in this area.

> The extent to which tribal sovereign immunity applies to non-party subpoenas of individuals in civil litigation is not clearly established in this Circuit, and there is little authority anywhere on whether a Native American tribe may be compelled to testify or produce documents as non-party fact witnesses pursuant to the district courts' subpoena power.

Id. at 87-88.  The Court in Catskill Development observed that the Second Circuit had held that sovereign immunity of the United States government applied to non-party subpoenas in civil cases and that comparisons to such cases were helpful.  Id. at 87-88 (citing United States Environmental Protection Agency v. General Elec. Co., 197 F.3d 592, 597 (2d Cir. 1999), vacated in part on other grounds, 212 F.3d 689 (2000)).

---

[4]This Court recognizes that the Catskill Development decision is not binding authority, nor did either party bring it to the Court's attention.  The Court does, however, find the decision instructive in an area of law where not much has been written.

Catskill Development was a lawsuit between non-tribal entities.  In that case, a casino development group sued a rival group, alleging tortious interference with their relationship with the Tribe.  Id. at 83-84.  The plaintiff business subpoenaed two non-party tribal members (characterized as "Chiefs"), who had signed a Land Purchase Agreement executed by the plaintiff business with a tribal gaming authority.  The plaintiff business also subpoenaed the tribe's executive director.  Id. The plaintiff business argued, as do Plaintiffs here, that the tribal sovereign immunity should not protect these officials from testifying as non-party fact witnesses.  Id. at 84.  The Magistrate Judge granted the Tribe's motion for protective order, finding that sovereign immunity prohibited enforcement of the subpoenas, absent the tribe's waiver, and that the Tribe had not waived its immunity.  Id.  The plaintiffs appealed from the Magistrate's Order, and the District Court affirmed  the Magistrate's Order in large part.

In so finding, the Court in Catskill Development noted the well-established doctrine of tribal immunity and concluded that non-party tribal officials acting in their official capacities, absent an express waiver of immunity, were protected by immunity.  Its ruling that tribal immunity generally protected the tribe and most of the non-party witnesses did not depend on whether the Tribe was or was not a party to the lawsuit.  Instead, the primary inquiry was whether the non-party tribal members were tribal officials and acting in their official capacities.  Id.

Here, it is undisputed that Talache and Yates are tribal officials of Nambé Pueblo.  Talache is the current governor; Yates is a Tribal Councilman.  The next part of the inquiry is whether the statements at issue were made in their official capacities. Thus, the mere fact that Plaintiffs elected to bring claims against non-tribal entities does not compel a finding that tribal immunity would not extend to Talache and Yates.

6

**B.**   ***Tribal Officers Acting in Their Official Capacities***

Tribal immunity does not extend to individual members who are acting in their individual capacities.   Santa Clara Pueblo, 436 U.S. at 59;   United States v. Velarde, 40 F. Supp. 2d 1314, 1315 (D.N.M. 1999).  Clearly, however, sovereign immunity extends to a tribal official who is acting in his or her official capacity and within his or her scope of authority, even if the Tribe is not a party of the lawsuit. Fletcher, 116 F.3d at 1324; Catskill Development, L.L.C. v. Park Place Entertainment Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

Here, Plaintiffs concede that the statements about which they seek to question Talache and Yates occurred when Talache was the Governor of Nambé, and Yates was a Tribal Councilman. Plaintiffs attach sworn testimony to their brief indicating that the statements, in question, concern what Talache and Yates may have told State taxation department officials about taxation and revenue issues relating to Nambé Pueblo.   Moreover, Plaintiffs served both men with the notices and subpoenas in care of their place of business at the Governor's Office on the Nambé Pueblo.

Plaintiffs indicate in a footnote that Talache and Yates were part of a political or familial faction opposed to Plaintiffs, implying that Talache and Yates perhaps were acting out of personal animosity and greed rather than in their official capacities when the statements at issue were made. However, Plaintiffs' speculation about the motivations of Talache and Yates stands in stark contrast with the actual deposition and affidavit testimony they also submit to the Court indicating that Talache and Yates were speaking in their official capacities regarding Pueblo taxation and revenue matters.

Plaintiffs also assert that at least Mr. Yates is not being deposed in his official capacity as a tribal councilman because the statements he allegedly made to Defendants occurred when Yates was

the Chief Executive Officer of the Nambé Pueblo Development Corporation ("NPDC").  According to Talache's and Yate's reply brief, NPDC was the sole Nambé Pueblo business enterprise.  The Court rejects Plaintiffs' arguments and concludes that an organization such as the NPDC is a branch of the Pueblo and as such, shares the Pueblo's sovereign immunity.  *See* Catskill Development, 206 F.R.D. at 83 n. 2. (noting that the Tribe's "Gaming Authority" was an instrumentality of the Tribe, and therefore, entitled to share in the Tribe's sovereign immunity); Winnebago Tribe of Nebraska v. Kline, __ F. Supp. 2d __, 2004 WL 73284 at *9 (D. Kan. Jan. 15, 2004) (relying on cases that hold an action against a tribal enterprise is an action against the tribe itself).

Plaintiffs have not alerted the Court to any evidence or authority that convinces the Court that Talache and Yates were acting in any capacity, other than their official capacities here.  Thus, the Court finds no basis to deny them immunity, with respect to the capacities in which they were acting.

### C.    *Waiver of Tribal Immunity*

Plaintiffs also claim that even if Talache and Yates were entitled to sovereign immunity in actions taken by them as officials on behalf of Nambé, they waived their immunity.  Plaintiffs assert that the waiver occurred when Talache and Yates invited the New Mexico taxation department onto the Pueblo and handed over extensive tax enforcement jurisdiction to it, including the issuance of the jeopardy assessments against Plaintiffs.  Moreover, in early 2002, the Nambé Pueblo, Talache and Yates approved a Joint Powers Agreement and Information Sharing Agreement Between Nambé Pueblo and the New Mexico Taxation and Revenue Department ("Information Sharing Agreement" or "Agreement") [Doc. No. 47, Ex. 3.], evidencing a waiver of the Pueblo's immunity.

The Information Sharing Agreement does not expressly state that Nambé's sovereign immunity is waived.  The Agreement provides, in part, for an exchange of tax information, including

the disclosure of information of fuel taxes and gross receipts taxes, under certain circumstances.  It authorizes Nambé to request the State to disclose audit reports or audit work papers and to allow Nambé employees to participate in joint audits.  The Agreement provides that "to the extent permitted by Nambé Pueblo, the State will represent both parties in any litigation to which the State is a party and which involves matters covered by this agreement."  Moreover, the State agreed to provide any witnesses requested by Nambé to testify in any such proceeding, and Nambé made a similar agreement to provide witnesses.  There is no discussion of sovereign immunity in the Agreement.

In Catskill Development, the Land Purchase Agreement (a document executed between the plaintiff business and the tribal gaming authority) contained an express waiver of sovereign immunity. Id., 206 F.R.D. at 82-83.  That document expressly provided the following: "[s]ubject to the foregoing, the Purchaser does hereby waive its sovereign immunity from unconsented suit . . . The Purchaser intends this waiver to be interpreted liberally to permit the full litigation of disputes arising under or out of this Agreement."  Id. at 83.

The Magistrate Judge, in Catskill Development, concluded that there was no waiver after applying a narrow interpretation to the waiver provisions.  However, the District Court reversed, concluding that the Magistrate Judge failed to give any weight to the explicit waiver, and that sovereign immunity would not protect the non-party tribal members' actions taken in their individual capacities.  Id. at 89.  The Court reasoned that the particular waiver in question was so explicit, along with its instructions that it be construed broadly, that there was a waiver.  Thus, based on the waiver, the plaintiff business would be allowed to narrowly question the non-party witnesses, in the presence

of the Magistrate, about any matters that did not involve tribal governance (of which the Court could not envision existed).  Id. at 90.

Here, the Court recognizes its continuing duty to strictly construe waivers of tribal sovereignty.  Unlike the Catskill Development express waiver, there is no such waiver in this matter.  Moreover, Nambé's requests to and agreement with the State do not evidence an express waiver of sovereign immunity, and the Court will not imply such a waiver.  Finally, Plaintiffs have access to the information that Talache and Yates provided to Defendants through those individuals, who are parties to this lawsuit and who have no claim to immunity.  Thus, Plaintiffs are not hampered in their ability to obtain information from other sources.  The Court, therefore, concludes that Nambé and/or Talache and Yates have not waived their right to tribal immunity under the facts of this case.

### D.   *Additional Case Law Analysis*

Plaintiffs also suggested that the Court engage in a balancing test to determine the question of whether Talache and Yates might be deposed, under the reasoning set out in United States v. Velarde, 40 F. Supp. 2d 1314, 1316 (D.N.M. 1999).  In Velarde, the District of New Mexico Court decided that "the Court's interest in protecting Defendant's constitutional rights justifies an intrusion upon the tribal sovereignty in order to enforce a subpoena on behalf of Defendant."

This Court does not find that Velarde compels an answer to the question in this case.  As noted by the Court in Catskill Development, "Velarde is distinguishable . . . in that the federal government itself subpoenaed the tribe.  A  tribe cannot assert sovereign immunity against the United States."  Id., 206 F.R.D. at 88.  Velarde is distinguishable here for the same reason.  It is Plaintiffs who have subpoenaed the non-party tribal members, not the federal government.

**<u>Conclusion</u>**

For all of the above-stated reasons, the Court concludes that both Motions for Protective Orders filed by the Nambé Pueblo on behalf of Talache and Yates should be granted, on grounds of procedural violations and tribal sovereign immunity.

IT IS THEREFORE ORDERED that Tom Talache's Motion for Protective Order, filed November 6, 2003 [Doc. No. 40] and  Herbert Yates' Motion for Protective Order, filed November 6, 2003 [Doc. No. 41] are GRANTED, and that the subpoenas are QUASHED.

_Lorenzo F. Garcia_

Lorenzo F. Garcia
Chief United States Magistrate Judge
