IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID A. PEREZ, SR., TONY B. VIGIL,
HAROLD PORTER and JAMES D. PORTER,

    Plaintiffs,

vs.                                                                             Civ. No. 03-361 JP/LFG

T. GLENN ELLINGTON, in his individual
capacity; JAMES BURLESON, in his
individual capacity; DAVID FERGUSON, in
his individual capacity; RICKY A. BEJARANO,
in his individual capacity; and JAVIER LOPEZ,
in his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

In October 2003, the Plaintiffs served subpoenas and notices of deposition on Tom Talache and Herbert Yates. Both Talache and Yates are tribal officials of Nambé Pueblo and non-parties to this lawsuit.[1] On November 6, 2003, Talache and Yates both filed motions for protective orders to quash the subpoenas. Doc. Nos. 40 and 41. On January 30, 2004, the Honorable Chief Magistrate Judge Lorenzo F. Garcia granted the motions for protective orders and quashed the subpoenas. Memorandum Opinion and Order (Doc. No. 66). On February 12, 2004, Plaintiffs filed Plaintiffs' Objections to Decision of Magistrate Judge Quashing Subpoenas (Doc. No. 74). The Plaintiffs' objections are made under Fed. R. Civ. P. 72(a). Having reviewed the Plaintiffs' objections as well as Talache and Yates' response brief, the Court finds that the Plaintiffs' objections should be denied and that Chief Magistrate Judge Garcia's January 30, 2004

---

[1] Talache is the Governor of Nambé Pueblo and Yates is a Nambé Pueblo Tribal Councilman. Yates was also Chief Executive Officer of the Nambé Pueblo Development Corporation (NPDC) during the time relevant to this lawsuit.

Memorandum Opinion and Order should be affirmed.

A. Background

The Plaintiffs are Native Americans who serve on the Nambé Pueblo Tribal Council. The Plaintiffs allege that on February 11, 2002, the Defendants, New Mexico Taxation and Revenue Department officials, illegally issued jeopardy tax assessments of over $4.6 million against each Plaintiff. The Defendants issued the jeopardy tax assessments to collect gasoline excise taxes and petroleum products loading fee taxes. On April 23, 2002, the Defendants instructed their staff and auditors to issue an Abatement of Tax Assessment for each jeopardy tax assessment made against the Plaintiffs. The abatements were back-dated so as to be retroactively effective as of March 12, 2002. The Plaintiffs bring this lawsuit under 42 U.S.C. §§1983, 1981, and 1982.

The Plaintiffs further allege that the Defendants issued the jeopardy tax assessments against the Plaintiffs based at least in part on statements made by Talache and Yates. Consequently, the Plaintiffs seek to depose Talache and Yates. Talache and Yates, however, assert that they are not required to appear at any depositions in this case because they are entitled to tribal sovereign immunity. Chief Magistrate Judge Garcia agreed with Talache and Yates by finding that Talache and Yates were entitled to tribal sovereign immunity and that they had not waived their tribal sovereign immunity. Memorandum Opinion and Order (Doc. No. 66), filed Jan. 30, 2004. Chief Magistrate Judge Garcia also found that the Plaintiffs violated the Local Civil Rules for the District of New Mexico with respect to the issuance of the notices and subpoenas. *Id*. The Plaintiffs object only to that portion of Chief Magistrate Judge Garcia's findings which address the tribal sovereign immunity issue.

B. Standard of Review

Under Rule 72(a), a reviewing district court must defer to the magistrate judge's decision "unless it is clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.), *cert. denied*, 522 U.S. 914 (1997). To overturn the magistrate judge's decision as clearly erroneous under Rule 72(a), the Court must have a "'definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)). "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988), *cert. denied*, 493 U.S. 847 (1989). With respect to a nondispositive discovery dispute, the district court will overrule a magistrate judge's determination only if the magistrate judge abused his discretion in making that determination. *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568 (D.N.M. 1998)(quoting *Comeau v. Rupp*, 762 F.Supp. 1434, 1450 (D. Kan. 1991)). The standard of review, however, for reviewing a question of law is *de novo*. *Weekoty v. United States*, 30 F.Supp.2d 1343, 1344 (D.N.M. 1998).

C. Discussion: Tribal Sovereign Immunity

In his January 30, 2004 Memorandum Opinion and Order, Chief Magistrate Judge Garcia initially concluded that the doctrine of tribal sovereign immunity should be applied to the situation where, as here, non-party tribal officials acting in their official tribal capacities are subpoenaed to provide deposition testimony. As Chief Magistrate Judge Garcia correctly observed, tribes possess immunity from suit because of their sovereign status. *Santa Clara Pueblo v. Martinez*,

436 U.S. 49, 58 (1978). However, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). A waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399 (1976)(quoting *United States v. King*, 395 U.S. 1, 4 (1969)). In addition to the tribes themselves, tribal sovereign immunity from suit protects tribal officers acting in their official capacities. *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir.1997).

It appears that only one court has directly addressed the issue of whether in a civil litigation context tribal officials may be compelled to testify or produce documents as non-party fact witnesses under subpoenas issued by a federal district court. *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D. N.Y. 2002). Applying the general principles of tribal sovereign immunity, the district court in *Catskill* held that non-party tribal officials cannot be compelled to testify or produce documents under subpoena if they were acting in an official tribal capacity with respect to the information sought by the subpoena and tribal sovereign immunity has not been waived. *Id.* at 86-90. Chief Magistrate Judge Garcia adopted and applied *Catskill* in his analysis of Talache and Yates' motions for protective orders. Considering the lack of caselaw in this area and the persuasive reasoning in *Catskill*, the Court finds that Chief Magistrate Judge Garcia's application of *Catskill* was not clearly erroneous or contrary to law.

1. Official Tribal Capacities

After having found that Talache and Yates are entitled to tribal sovereign immunity for acts committed in their official capacities, Chief Magistrate Judge Garcia proceeded to determine

4

whether the information Plaintiffs seek from Talache and Yates was generated within their official tribal capacities.  Chief Magistrate Judge Garcia found that Talache's statements to New Mexico Taxation and Revenue officials occurred when Talache was Governor of Nambé Pueblo and thus were made in his official tribal capacity.  Chief Magistrate Judge Garcia dismissed as speculation the Plaintiffs' allegation that Talache acted out of personal animosity and greed rather than in an official tribal capacity.  Chief Magistrate Judge Garcia also found that Yates' statements to the New Mexico Taxation and Revenue officials occurred when he was a Tribal Councilman and apparently when he was the Chief Executive Officer of NPDC.[2]  Chief Magistrate Judge Garcia found that Yates' statements, like Talache's statements, were made in his official tribal capacity and not out of personal animosity and greed.

The Plaintiffs argue, however, that if Talache and Yates acted in concert with the Defendants and the Defendants' actions were performed "under color of state law" within the meaning of §1983, then Talache and Yates could not have made their statements to the New Mexico Taxation and Revenue Department in an official tribal capacity.  *See Evans v. McKay*, 869 F.2d 1341, 1348 n.9 (9th Cir. 1989).  In the Tenth Circuit a plaintiff establishes that an action was performed "under color of state law" by showing that there is a "real nexus" between an actor's conduct, whether the actor is a tribal or state official, and the actor's "badge" of state

---

[2]Since the NPDC is a tribal enterprise, tribal sovereign immunity extends to it and its officers when acting in an official tribal capacity.  *See Winnebago Tribe of Nebraska v. Kline,* 297 F.Supp.2d 1291, 1303 (D.Kan. 2004)(citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157 n.13 (1973); *Barker v. Menominee Nation Casino*, 897 F.Supp. 389, 393 (E.D.Wis.1995)); *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 29 (1st Cir. 2000)(citing *Dillon v. Yankton Sioux Tribe Housing Auth.*, 144 F.3d 581, 583-84 (8th Cir.1998); *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670-71 (8th Cir.1986)).

5

authority. *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1305 (10th Cir. 2001)(citation omitted). In other words, the actor must have "'exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id*. (quoting *David v. City and County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997)).

The facts presented to Chief Magistrate Judge Garcia indicate that Plaintiffs and John Perez, Jr., apparently a Nambé Pueblo Tribal Councilman, entered into a gas distribution contract with Gas Plus, presumably on behalf of Nambé Pueblo. In January 2002, Talache, then Governor of Nambé Pueblo, asked New Mexico Taxation and Revenue officials to audit the Pueblo's books because he felt that under the Gas Plus distribution contract there should have been more profits and that the proper state taxes had not been paid under the Gas Plus distribution contract. Apparently, Talache was unable to get an accounting through Nambé Pueblo regarding the Gas Plus distribution contract. Talache also informed New Mexico Taxation and Revenue officials that he believed the Gas Plus distribution contract was not valid because of a lack of sufficient signatures. The Bureau of Indian Affairs (BIA) was also apparently investigating the validity of that contract. The New Mexico Taxation and Revenue officials indicated that they could perform a limited audit to determine if the state taxes had been properly paid under the Gas Plus distribution contract. On February 7, 2002, Talache, on behalf of Nambé Pueblo, and the New Mexico Taxation and Revenue Department entered into a Joint Powers Agreement in which Nambé Pueblo and the New Mexico Taxation and Revenue Department agreed to disclose to each other information regarding fuel taxes and gross receipts taxes so that both entities could better administer and enforce their respective tax laws.

Prior to serving the jeopardy tax assessments against the Plaintiffs on February 11, 2002, Defendant Javier Lopez, a staff attorney for the New Mexico Taxation and Revenue Department, asked Defendant Ricky Bejarano to inform the Nambé Pueblo Governor's Office that the New Mexico Taxation and Revenue Department was going to serve the jeopardy tax assessments on the Plaintiffs. Defendant Lopez did not know whether Defendant Bejarano in fact notified the Nambé Pueblo Governor's Office about the jeopardy tax assessments prior to serving the jeopardy tax assessments on the Plaintiffs. The Defendants issued the jeopardy tax assessments against the Plaintiffs after examining the Gas Plus distribution contract, speaking with Nambé Pueblo tribal lawyers, speaking with BIA officials, and then determining that the Gas Plus distribution contract was invalid. On February 27, 2002, a majority of the Nambé Pueblo Tribal Council, including Yates, ratified the Joint Powers Agreement.

The evidence before Chief Magistrate Judge Garcia shows that Talache and Yates did not act "in concert" with the Defendants to the extent necessary for the Court to conclude that the actions undertaken by Talache and Yates were outside the scope of their tribal authority. In addition, Chief Magistrate Judge Garcia's analysis and subsequent finding that Talache and Yates' statements were made in their official tribal capacities are not clearly erroneous or contrary to law. Consequently, Talache and Yates are entitled to tribal sovereign immunity. The next inquiry then is whether Chief Magistrate Judge Garcia's finding that Talache and Yates did not waive tribal sovereign immunity is clearly erroneous or contrary to law.

2. Waiver of Tribal Sovereign Immunity

The Plaintiffs argue that Nambé Pueblo waived tribal sovereign immunity with respect to the statements made by Talache and Yates in three ways: 1) by allowing the New Mexico

7

Taxation and Revenue Department to come onto the Pueblo and issue the jeopardy assessments against the Plaintiffs; 2) by entering into the Joint Powers Agreement; and 3) by incorporating waiver language in the Federal Corporate Charter for the NPDC. Chief Magistrate Judge Garcia found that allowing the jeopardy tax assessments to be served did not amount to an express and unequivocal waiver of tribal sovereign immunity. Chief Magistrate Judge Garcia also found that the Joint Powers Agreement did not contain an express and unequivocal waiver of tribal sovereign immunity. These findings are neither clearly erroneous nor contrary to law.

The Plaintiffs, moreover, did not argue to Chief Magistrate Judge Garcia that the Federal Corporate Charter for the NPDC provided a basis for concluding that Nambé Pueblo waived tribal sovereign immunity with respect to Yates nor did the Plaintiffs produce the Federal Corporate Charter for the NPDC for Chief Magistrate Judge Garcia's review. The Plaintiffs submitted the Federal Corporate Charter for the NPDC to the Court for the first time in conjunction with their objections to Chief Magistrate Judge Garcia's January 30, 2004 Memorandum Opinion and Order. A district court performing a Rule 72(a) review cannot consider evidence which was not before the magistrate judge. *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92-93 (3rd Cir. 1992); *Claytor v. Computer Associates Intern., Inc.*, 211 F.R.D. 665, 667 (D. Kan. 2003). This Court, therefore, is not obliged to consider the Federal Corporate Charter for the NPDC in analyzing whether Chief Magistrate Judge Garcia's finding that Nambé Pueblo did not waive tribal sovereign immunity is clearly erroneous or contrary to law.

In sum, Chief Magistrate Judge Garcia did not abuse his discretion when he granted Talache and Yates' motions for protective orders. Accordingly, Plaintiffs' Objections to Decision of Magistrate Judge Quashing Subpoenas will be denied and Chief Magistrate Judge Garcia's

January 30, 2004 Memorandum Opinion and Order will be affirmed.

IT IS ORDERED that:

1. Plaintiffs' Objections to Decision of Magistrate Judge Quashing Subpoenas (Doc. No. 74) are denied; and

2. Chief Magistrate Judge Garcia's January 30, 2004 Memorandum Opinion and Order (Doc. No. 66) is affirmed.

_____
SENIOR UNITED STATES DISTRICT JUDGE